Thank you, Your Honor. I appreciate that. It is my privilege to serve. May it please the Court, Counsel, my name is Karen Moreland and I am here representing the appellant here, the defendant below, Mr. Roberto Williams. Mr. Williams is here on convictions for two counts of felon in possession of a firearm stemming from two separate incidents. We respectfully ask in this Court to vacate those convictions and alternatively to remand for further proceedings to the District Court. We have in our briefing raised a number of different issues. My intent this morning is to focus on what feels like the most challenging of those, which is the question of the use of his prior Illinois convictions as predicate offenses for the felon in possession charges. Roberto Williams Counsel, in that regard, what's the status of what's been referred to as the body armor conviction? Is that still a valid conviction or is that also void ab initio? Karen Moreland It is Mr. Williams' position that it is void ab initio. I would note that because of the way the District Court handled this case, the District Court did not in this instance specifically consider the individual convictions and did not rule on whether any, all, or some of them fall within the facial unconstitutionality. We don't have that ruling at this point from the District Court in this matter. The reason we have that is because the District Court, relying on Lewis, essentially concluded that that was not a valid challenge. It's a collateral challenge under Lewis that could not be brought up at this proceeding. And respectfully, it is our position that Lewis is distinguishable. And what primarily makes Lewis distinguishable is that Lewis involved essentially an as-applied challenge. So Mr. Lewis argued that his predicate conviction was obtained in violation of the Sixth Amendment right to counsel, which is fundamentally different from the facial invalidity that we have at issue in this case. And what makes it different is that by declaring a statute facially unconstitutional, what the courts, and in this case both the Illinois Supreme Court and the Seventh Circuit Court of Appeals, have said is that the conduct that the statute at issue presumed to make criminal is actually protected conduct. That there was no application of the statute which was consistent with the Constitution, specifically in this instance the Second Amendment. And so what that means is that this was not as applied. This was not about the facts of any of these particular cases. The Illinois legislature had attempted to criminalize something that was protected constitutional conduct. And the result of that is that no conviction pursuant to that statute, whenever obtained, could be valid, could never be valid. Robertson So doesn't your case then turn on how we read the Illinois Supreme Court's opinion in NRA NG? And how do you read that case in terms of how it applies here? Because it said that you need judicial action, but yet in the same case it seemed to say, well, any court with jurisdiction can declare the statute, or can nullify the sentence if the statutes void ab initio. Can this court fill that function, or do we have to be an Illinois State court? O'Connell Yes, Your Honor. Our position is that this court can fill that function. The district court below could have filled that function if it had taken up the issue. I agree that NG is significant to this case, because that is the case in which the Illinois Supreme Court expanded on and explained the void ab initio and how it applies. It essentially said these unconstitutional convictions cannot be used for any purpose, and went on further to state under Illinois law, those convictions are challengeable in any court at any time. And so if we take the Illinois Supreme Court at its word, this court is a court, the district court was a court. Roberts Why shouldn't we just remand to the district court and have the district court take up that issue? O'Connell Your Honor, I think that would be an appropriate outcome, quite frankly. Roberts That would be what? O'Connell That would be an appropriate outcome on this issue. The district court did not in the first instance consider the case. There are five separate convictions. I think it's a complicated question that would be appropriate for the district court to consider in the first instance. And so with Lewis being distinguishable, it is our position that that is what needs to happen, is there needs to be an evaluation of those individual convictions, the statutes under which they were obtained. And if in fact, as Mr. Williams submits, they are all constitutionally invalid, they were all obtained pursuant to facially unconstitutional statutes, then they simply cannot be used as predicate offenses. Roberts What efforts have been undertaken to collaterally attack those convictions? O'Connell My understanding is that Mr. Williams has made some attempts in state court to raise petitions. I think one of the reasons that these facially unconstitutional statutes are different from the issues at Lewis is because what essentially happens then is Mr. Williams is facing this restriction on his liberty as a result of unconstitutional convictions. And the government's position would require him first to go to the Illinois courts to get those convictions formally vacated, which puts an additional barrier in the way of his exercise of constitutional rights, constitutional rights. It's a difficult thing for a person to do, assuming that they realize the problem and then have actual access to the courts, potentially access to counsel to assist them. So to more directly answer your question, Your Honor. Kennedy This position sounds contrary to sun bearer to me. To the extent I understand it, we're in bank, we discussed the limitations on this kind of attack in federal court. O'Connell And I think that what really Kennedy How do you distinguish, how does sun bearer not preclude this argument? O'Connell And I apologize, Your Honor. I'm not connecting sun bearer with the particular case that Your Honor has in mind. I don't always recognize case names as well as I ought to. Kennedy I want to talk about what's cognizable in federal habeas. O'Connell And I think part of the issue there is that we're not at a federal habeas at this point. The issue was raised at the district court at the question of whether these convictions could be used as predicate offenses, whether they were admissible at trial. And so we have this fundamental constitutional question of what is the effect of declaring a statute to be facially unconstitutional and the effect of deciding that that conduct, which is the subject of this conviction, was actually constitutionally protected. And the end result of that under the Constitution should be that it is a defense to the use of those predicate offenses as evidence in a district court proceeding because that conduct could never have been punished. That conduct could never have been subject to a conviction, could never have been a bar to the subsequent possession of a firearm because it was in fact constitutionally protected. And so the fact that those convictions were not previously vacated, while unfortunate, is not a bar to the relief that Mr. Williams is seeking at this point coming directly from the trial court, directly from trial. And so it is his position that these convictions simply cannot be used, that the Lewis case is distinguishable, that the district court erred in relying on the Lewis case to bar him from making that challenge. And so recognizing the procedural posture that we're in and the fact that the district court did not in the first instance consider the validity of those convictions, it is his position that a remand would be appropriate so that the district court in the first instance could consider those convictions and determine whether they in fact, in totality or in part or not at all, fall within the facial invalidity and unconstitutionality as found by the Illinois Supreme Court and by the Seventh Circuit Court of Appeals. So we're asking the court to reverse on that issue and a remand would not be inappropriate. Then I would like to touch briefly on the question of the constitutionality of the stop of Mr. Williams' vehicle in July of 2020. This was the subject of count one. We're challenging the basis of this stop because what the record in this case shows is that the basis for the stop was the officer's belief that the vehicle's occupants may have been witnesses to a crime. The Fourth Amendment requires more than individuals to be stopped, to be subject to a Terry traffic stop, be witnesses. It in fact requires that they have a, they are suspected of. But counsel, don't we have more here? More than just the fact that they might be witnesses under the totality of the circumstances? It seems to me the officer had additional factors that may have come into play in terms of the proximity to the crime, things like that. So there were issues which are consistent with them having been witnesses. And I think where that comes in is it is entirely consistent, Your Honor, with the statement of the victim as relayed to the officers that he believed they were witnesses. And when explicitly asked, he told the officers that they had not participated in the alleged crime. And so when you take those together, it simply is not sufficient for reasonable suspicion that they had been involved. We have reasonable suspicion that they were witnesses, to be sure, but not as to involvement. And I think that it is a close question, but it is distinguishable from other cases because in those other cases, you generally have witnesses who are saying, yeah, we saw them, that's the suspects. And in this case, what we have is an alleged victim who says, no, no, no, they weren't involved. They were just there. They saw what happened. And so with that being the record... Now, the way I read the magistrate judge's decision, which was adopted by the district court, as I recall, this wasn't the basis. Potential witnesses was not the basis for recommending the stop. It was valid. Why can you even raise it on appeal? So, Your Honor, I think that the district court rounded up the magistrate judge's report and recommendation. The report and recommendation... Rounded up.  What do you mean? So the report and recommendation concluded that it was reasonable for the officer to believe the occupants of the SUB may have had pertinent information. So I read that as a conclusion, having presided over the evidentiary hearing, that there was reasonable suspicion that they were witnesses, that they had information. You said district court. Are you talking about the magistrate? I'm looking here. Was there just a simple adoption of the magistrate judge's order? No, Your Honor. It was not a simple adoption. The district court did adopt the report and recommendation with some amendments. And the district court did amend to find that there was more than mere involvement and that the individuals may have participated in the alleged assault. So the magistrate judge's opinion, the report and recommendation, is found in appellant's appendix at page 35. And then the district court opinion... So what was the modification? That the alleged victim was asked for clarification and said that no one had specifically assaulted him, but that the officer was justified in concluding that the occupants were somehow involved or suspecting that they were somehow involved based upon various factors, including the alleged victims. So that's not the witness alternative ground that you're attacking, an alternative ground that doesn't get at the main. There was reasonable suspicion they were involved. And our position is that that was not supported by the record and that the magistrate judge's conclusion that they may have had pertinent information is not sufficient to justify the stop in this case. Barring any further... You're attacking fact findings. Correct, Your Honor, on that instance. I didn't read the brief as doing that. Barring further questions, I'd reserve what remains of my time for rebuttal. Thank you.  May it please the Court. Counsel. Counsel. Good morning again, Your Honors. I guess I would start with the stop issue and try to fairly briefly address that and then address the predicate issue if that's acceptable to the Court. With respect to the stop issue and Judge Loken's questions, your questions with respect to the record, the magistrate found both independent bases for the stop. He found that there was reasonable suspicion that the vehicler's occupants were involved in the criminal offense. And he found that, at minimum, the officer had a reasonable belief that there were potential witnesses to the armed assault in the vehicle. And under Lidster and other precedents cited by the magistrate, that that independently supported the lawfulness of the stop. So, participants and witnesses. The District Court, and I believe this is at pages 15 to 16 of the addendum, said, I agree with the magistrate, the stop was appropriately, was lawful based on a reasonable suspicion that they were potentially involved. And therefore, the District Court explicitly said, I do not need to reach the issue of whether the stop was also independently lawful on grounds that the occupants could have been potential witnesses. Because this Court can affirm on any basis in the record, and because the record was fully developed in front of the magistrate with respect to both bases, the government has argued in its brief, and the defendant has addressed in its, in his argument, both bases as an independent ground. Counsel, if all of the predicate convictions for the felon and possession charge are void ab initio, under Illinois law, do we even need to reach the other issues? Yes, you do, you do, Your Honor, for, because the fact that it's been declared void ab initio under Illinois law doesn't end the inquiry of the predicates. And that's why. Doesn't do what? It doesn't end the inquiry about the predicates. So, the Court's question was, does the fact that, in re NG, in the Illinois State Court, said that the statute's facially unconstitutional and the Court's inquiry is to the other issues. I agree if the Court determines that those predicates are not, not valid, that you would not have to reach the other issues, but I don't believe that Illinois decision alone is dispositive on the predicate issue for the reasons I'd like to discuss. So, what I'd like to do is discuss two things that were prompted by the Court's questions and defense argument. One is Lewis, and whether Lewis and his progeny, including multiple decisions by this Court, are distinguishable. And second, Judge Grass, the question you raised initially, but I think from the government's view, is the second question, which is, if the Illinois predicates are addressed, how should the Court treat them? With respect to Lewis, Lewis is not distinguishable, and I think a plain reading of that case demonstrates that. What Lewis held explicitly is that in a federal gun prosecution, there it was 1202, but Lewis talked about 922G. And this Court has applied Lewis in 922G cases. What Lewis said is that Congress indicated no intent and statutory language does not support a defendant's ability to make collateral attacks on a State court conviction in a federal gun prosecution. It refers to the natures of those attacks, impermissible in gun prosecutions, as constitutional attacks. It's not limited to uncounseled Sixth Amendment due process. Lewis says, and it says this explicitly, if a defendant believes his State court predicate should not be used in a federal gun prosecution, he should go into State court and seek its vacature. And it's conceded that defendant didn't do that here. And I'd like to talk about re-NG and the Illinois vacature rules in a moment, but I think it is important from the government's position not to dismiss at the threshold that the Court need not reach that Illinois law. Lewis has been applied by this Court in Baina, in Elliott, which was a 922G1 case, and in Dorsch. And the defendant neither in its reply brief nor here today addresses the Seventh Circuit's decision in Thompson. And in Thompson, the defendant in the Seventh Circuit had been convicted of a 922G1 offense, the same AUUW 1.6A predicate that the defendant challenges with respect to two of the five convictions, the one that is clearly addressed by Aguilar and re-NG. The defendant in Thompson said, that conviction's void ab initio under State law, and therefore, my Federal felon in possession conviction should be vacated. And what the Seventh Circuit held in Thompson, citing Lewis and following Lewis and its prior precedent, was that the fact that the State court had declared the statute void ab initio was not enough under the Supreme Court's precedent in Lewis that the defendant, as the Seventh Circuit said, under State court, Illinois State court law, should have filed a petition in State court to have those convictions vacated. Because at bottom, it's the State court that has to make an Aguilar determination. Were each of these five convictions truly subject to the Aguilar invalidation? And that should go first in State court. And if a defendant successfully gets his State court conviction vacated, it cannot, of course, be used as a Federal predicate. But unless and until he does so, that's a valid State court judgment, and it is a valid felon in possession predicate. Robertson, you don't see any constitutional problems with imprisoning someone for a conviction that is facially unconstitutional? Your Honor, the problem I see in that formulation, respectfully, is that it assumes that his convictions are unconstitutional. And that determination has not been made. And that's the reason that in Lewis, in Elliott, in Boehner, and in Thompson in the Seventh Circuit, the Supreme Court, this Court, and the Seventh Circuit have announced and abided by a rule that says it's the State court, the court with jurisdiction over the criminal case, that has to, in the first instance, make the very important determination you're raising, Your Honor. Why is it important the State court make the determination? In part, because we have the State court records on body armor, as you referenced, Your Honor. But it's not the Federal court's job to go into the State court records and ascertain whether that body armor conviction is AGULA or qualified. That's a State, only the State court has jurisdiction over those State convictions. And the defendant's position here today, that INRI NG stands for the proposition that, quote, any court, close quote, can invalidate these convictions, is not an accurate reading of NG. What NG says, and this is quoted at the government's brief at 60, is that under our precedent, it is sufficient if a person subject to a conviction premised on a facially invalid statute raises his or her challenge through an appropriate pleading in a court possessing jurisdiction over the case, that is, over the underlying criminal case. Neither the district court nor this court in a Federal gun prosecution has jurisdiction over that State court case. And that's why, in the first instance, the responsibility and the authority to determine whether those convictions are invalid rest in State court, and that's, in turn, why the Lewis rule, as applied by this court and in Thompson, exists. Should a stay be entered while the State court makes that determination? No, Your Honor. What Lewis indicates is that a defendant has to clear his status before possession of the firearm. And the Lewis case discusses the congressional intent behind these gun possession statutes. It indicates that it's the defendant's responsibility to clear his status, and that Congress and public interest support a rule that says you can't carry a gun if you've got a valid State court conviction that dispossesses you. And then you use the word valid. Under Illinois law, it was void ab initio. It was never valid. Your Honor, convictions. And then they said that a court has a duty to invalidate it sua sponte. If it's raised in a petition or if it's sua sponte in a court of jurisdiction, and that's happened in Illinois courts. Defendants have brought appeals of their criminal convictions in State court. But the Illinois court can't tell this court or the district court what they need to do sua sponte. There's no jurisdictional authority crossing that direction, just as there's no authority for the judge in this case to vacate a judgment in Illinois court. And I think, and Judge Garza, I think I'm being clear, but I want to make sure I am where I take, where I depart with the foundation of your question. It's not that I don't think that at least two of these convictions, the one that are most clearly AUW convictions, may not be subject to vacature in Illinois under Aguilar. I'm not suggesting they may not be subject to vacature, and that if the defendant went there, they'd be vacated. I don't take the same position with respect to the body armor, but with respect to the body armor, my position is defendant had to do that, and that we don't, that the district court doesn't have authority to do it, not only under jurisdictional principles, but under this Court's precedent in Boehner and Elliott, derived from Lewis, and as persuasively applied, because the line of authority is the same in Thompson, under the identical circumstances as here. I would like to address, with even greater specificity, some of your questions, Judge Garza, about the body armor conviction. And as the government has outlined, the body armor conviction is a different animal for a couple of reasons. One, the court, the documents of conviction indicate it's 1.6D, not 1.6A. Although that is a difference, 1.6D increases the statutory penalty for a felon who possesses a firearm when he does not have a valid firearm owner's identification card and he is in possession of or wearing body armor. And both of those requirements, which increase the statutory penalty and are not limited to the prior fact of conviction, under a lien and under apprentice, as court knows, become elements of the offense. They have to be proven to a jury beyond a reasonable doubt. And that's, as the government discusses in the brief, is what distinguishes the Charas case from Burns. Burns, although it's a 1.6 case and Charas is not, in Burns the only issue was the 1.6D provision was the fact of prior conviction. And that's viewed as an exception under a lien and under apprentice. But the body armor conviction requires proof of additional elements beyond the fact of prior conviction, the Floyd card and the possession or wearing of body armor. In that circumstance, then, the fact that the felon in possession statute in Illinois that dispossesses based purely on the fact of prior conviction and says those convictions are facially unconstitutional does not extend to the body armor conviction, which has additional elements that go beyond the fact of prior conviction and were not addressed in Burns. And the Illinois Supreme Court in Mosley said, for example, that the Floyd requirement under 1.6A distinguishes it from Aguilar. And it's outlined in the government's brief perhaps more clearly than I presented it this morning. But I think if this court, and this is to Judge Grasso's concern as well as the courts, if this court goes into the convictions, I'd note, first of all, that this is a de novo review that's a question of law as to whether a state court conviction is a valid predicate. So remand may not be appropriate to the extent that this court determines that, okay, we're not going to apply Lewis, we're going to look at the state court convictions, and we're going to vacate them ourselves if they're Aguilar qualified as valid predicates, as valid Illinois judgments, and we're going to include the body armor conviction as under the authority of Aguilar. There's enough of a record here for the court to determine that in fact the body armor conviction is not Aguilar qualified, is my point, if you take purely de novo review of the conviction. If the court ---- Kennedy. I'm sorry. You keep mentioning Burns. I don't see a case called Burns in the table of authorities in any of the three briefs. I have no idea what you're referring to. Burns is in the government's table of authority at V. That's the page of the table of authorities. It's cited people view Burns to page 63 of the government's brief. Oh, there it is. And the chair as Burns issue, Your Honors, is only important if the court reaches whether the body armor conviction is Aguilar qualified, and I won't spend any more time on it today, but that distinction between the body armor conviction, including elements that a standard felon possession statute does not, is really where chairs and Burns come into play. Unless the court had any other questions on the predicate issue, which I'd be very happy to address, I did just want to add with respect to constitutionality of the stop, that after briefing in this issue, Judge Gross, you authored an opinion in Winborn. Judge Loken, you were part of that panel as well. It's at 111 Fedforth 910. It was handed out in August of this year, and it addresses and reaffirms the principle that police need not be certain of a connection between a vehicle or suspects or witnesses and a car they're stopping when, approximately and otherwise, they have reasonable grounds to stop it. So I just wanted to add that authority for the court's consideration. Unless the court has any other further questions, I'd otherwise rest on the briefs, and thanks for the opportunity to argue this morning. Thank you, Your Honors. I would like to go back again to Lewis and to what my colleague has said about Lewis, and specifically start with the Thompson case out of the Seventh Circuit. Obviously, as a Seventh Circuit case, it is at best persuasive. It is an extremely short opinion and did not at all deal with the facial unconstitutionality of the statute at issue. And so I don't think that that is persuasive authority that this Court should adopt. Regarding Lewis, I would note that Lewis is, in fact, primarily statutory interpretation, but also considered the constitutional implications. Certainly, the statutes have changed, but more broadly, the government's position in this case is remarkable. It acknowledges that at least two of Mr. Williams' convictions are for conduct that was constitutionally protected, and yet it would impose a new conviction and sentence based proximately on that conduct. We think that's remarkable and unconstitutional, and we would ask the Court to reverse. Thank you. Thank you. Thank you, Counsel. The case raises a number of difficult issues. It's been well briefed, and the argument's been helpful. We'll take it under advisement.